FAIR SHAKE ENVIRONMENTAL LEGAL SERVICES
Oday Salim (PA Bar No. 309542)
osalim@fairshake-els.org
3445 Butler Street, Suite 102
Pittsburgh, PA  15201
Telephone:  (412) 904-2774
Facsimile:  (412) 291-1197

LEXINGTON LAW GROUP
Mark N. Todzo (CA Bar No. 168389)
mtodzo@lexlawgroup.com
Joseph Mann (CA Bar No. 207968)
jmann@lexlawgroup.com
(Both admitted *pro hac vice*)
503 Divisadero Street
San Francisco, CA  94117
Telephone:  (415) 913-7800
Facsimile:  (415) 759-4112

Attorneys for Defendant
CENTER FOR ENVIRONMENTAL
HEALTH

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BABYAGE.COM, INC.,<br><br>                              Plaintiff,<br><br>     vs.<br><br>CENTER FOR ENVIRONMENTAL HEALTH,<br><br>                              Defendant. | Case No. 3:14-CV-00431-RDM<br>(Honorable Robert D. Mariani)<br><br>**DEFENDANT CENTER FOR ENVIRONMENTAL HEALTH'S BRIEF IN SUPPORT OF MOTION FOR SANCTIONS**<br><br>Action filed:    March 7, 2014<br><br>[Filed electronically, concurrently with Defendant's Motion for Sanctions] |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The Nature Of The Dispute. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    The Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.    CEH's California Enforcement Of Proposition 65 Against Sellers Of Products Containing TDCPP. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    D.    BabyAge's Involvement In The California Litigation. . . . . . . . . . . . . . . . . . . . . . 5

    E.    BabyAge's Duplicative Pennsylvania Suit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    F.    CEH's Unsuccessful Attempts To Convince BabyAge Not To Pursue The Frivolous Pennsylvania Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

LEGAL STANDARDS FOR SANCTIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    I.    BabyAge's Claims Have No Colorable Legal Basis, And Are Founded On False Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    II.    BabyAge Brought This Suit For An Improper Purpose. . . . . . . . . . . . . . . . . . . 13

    III.    The Court Should Impose Sanctions Against BabyAge Sufficient To Compensate CEH For Costs Incurred In Defending This Duplicative, Frivolous Suit. . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**TABLE OF AUTHORITIES**

**CASES**

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Committee of Dental Amalgam Mfrs. & Distribs. v. Stratton,*
    92 F.3d 801 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cvetko v. Derry Tp. Police Dep't,*
    2010 WL 3338256 (M.D. Pa. Aug. 24, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gaiardo v. Ethyl Corp.,*
    835 F.2d 479 (3d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*General Motors Corp. v. Tracy,*
    519 U.S. 278 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hanoverian, Inc. v. Pennsylvania Dep't of Envtl. Protection,*
    2008 WL 906545 (M.D. Pa. Mar. 31, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lal v. Borough of Kennett Square,*
    935 F. Supp. 570 (E.D. Pa. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lease v. Fishel,*
    712 F. Supp. 2d 359 (M.D. Pa. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Matthews v. Freedman,*
    128 F.R.D. 194 (E.D. Pa. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*O'Donnell v. Pennsylvania Dep't of Corrections,*
    2011 WL 3163230 (M.D. Pa. July 26, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Project 74 Allentown, Inc. v. Frost,*
    143 F.R.D. 77 (E.D. Pa. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*United States v. Pennsylvania Dep't of Envt'l Resources,*
    923 F.2d 1071 (3d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**STATUTES & REGULATIONS**

21 U.S.C. § 343. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    § 467e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    § 678 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    Ch. 9, Subch. IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      Subch. V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      Subch. VI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Subch. IX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 1343(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 2201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 2202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

27 Cal. Code Regs. § 25701(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

§ 25705.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 27001(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 27001(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Cal. Health & Safety Code § 25249.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 25249.10(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rule of Civil Procedure 8(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

11(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

11(c)(5)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# **INTRODUCTION**

Plaintiff BabyAge.com, Inc. ("BabyAge") admits that it exposes consumers and users of its furniture products in California to carcinogenic flame retardants without first warning them, in violation of California's Proposition 65.  To put a halt to this unlawful conduct, defendant Center for Environmental Health ("CEH") brought a lawsuit against BabyAge in California over nine months ago and has been actively prosecuting that suit ever since.  Despite this, BabyAge has steadfastly refused to appear in that action, and has informed CEH that it never intends to do so.

Rather than properly defending itself in the California action, BabyAge filed the instant suit, alleging that it brought this federal declaratory judgment action as a "necessary" measure to avert the "unconstitutional" application of California law causing it "irreparable harm."  Docket No. 1 ("Compl."), ¶¶ 2, 5.  Specifically, BabyAge contends that this Court should enjoin the California proceedings because (1) the warning requirements of Proposition 65 are preempted by federal law; and (2) these warning requirements place an undue burden on interstate commerce. Either of these claims could have been raised as defenses in the California suit. BabyAge filed its duplicative action here in this Court, which is presumably convenient for it but considerably inconvenient for CEH – and which lacks personal jurisdiction over CEH – because it does not want to hire local counsel in California. Consequently, CEH has been forced to expend significant resources, including hiring local Pennsylvania counsel, to defend itself here.

Adding insult to injury, BabyAge's "constitutional" claims are patently frivolous.  BabyAge has identified no federal law that preempts the California law CEH seeks to enforce, either implicitly or explicitly, as applied to *furniture* – indeed, the only provision it references governs the mislabeling of *food*.  Likewise, it has alleged no plausible scenario under which the enforcement of Proposition 65 will place an undue burden on interstate commerce.  Rather, it offers a counterfactual version of Proposition 65's requirements – which can (and have)

readily been met by scores of other furniture vendors – to further its illusory claim that compliance with the statute is onerous.  Having presented no remotely meritorious arguments, it is plain that the only reason BabyAge has filed suit here is to increase CEH's litigation costs; by applying this pressure, it hopes to coerce CEH to drop its California suit.

CEH does not take lightly the step of filing the instant motion for sanctions. Indeed, before doing so, it took pains to explain to BabyAge the frivolous nature of its claims, and to urge BabyAge to join the California proceedings instead.  Since BabyAge has refused to withdraw this federal suit, CEH has no choice but to seek a monetary sanction in an amount sufficient to reimburse CEH for its attorneys' fees in defending these sham proceedings.  CEH asks for an award of sanctions jointly and severally from BabyAge and its attorney, Andrew J. Katsock, III.

## FACTUAL BACKGROUND

**A.    The Nature of the Dispute.**

As set forth in CEH's concurrently filed Motion to Dismiss, the underlying California case involves the presence of tris(1,3-dichloro-2-propyl) phosphate ("TDCPP"), a toxic chemical additive known to the State of California to cause cancer.  27 Cal. Code Regs ("C.C.R.") § 27001(b); Cox Decl., ¶ 9.[1]  TDCPP is used to treat polyurethane foam, which is used as padding or cushioning in a variety of consumer products, including upholstered furniture.  Cox Decl., ¶¶ 7-8 & Exh. 1, at 3.  Although TDCPP and other chemical flame retardants are added to furniture for the ostensible purpose of preventing fires, studies show that such chemicals afford no flammability protections, especially in comparison to non-toxic methods of fire control.  Cox Decl., ¶ 13; *id.*, Exh. 3, at 1-3; *id.*, Exh. 4, at 21.

Proposition 65 is a public health and safety statute that requires the provision

_____

[1] CEH has submitted two declarations – one from Caroline Cox, Research Director of CEH, and one from Joseph Mann, of California counsel for CEH – in support of its Motion to Dismiss.  As in that Motion, CEH will use "Cox Decl." to refer to the former and "Mann Decl." to refer to the latter.

of a "clear and reasonable" warning prior to any "knowing and intentional" exposure of persons in California to chemicals listed by the state as known to cause cancer, birth defects, or other reproductive toxicity.  Cal. Health & Safety Code ("H&S") § 25249.6.  Because TDCPP is listed as a chemical known to cause cancer, warnings as to its carcinogenicity have been required since October 28, 2012.  27 C.C.R. § 27001(a)-(b); H&S § 25249.10(b).  This requirement applies generally to all TDCPP exposures caused by those who sell products to California consumers that contain TDCPP.  No warning need be provided, however, on products that do not contain TDCPP, or that contain levels that do not cause health risks.  The California Office of Environmental Health Hazard Assessment ("OEHHA") has established a numeric "No Significant Risk Level" ("NSRL") for TDCPP at 5.4 µg/day, to serve as a presumptive "safe harbor" of an exposure causing no appreciable cancer risk.  Cox Decl., ¶ 12 & Exh. 2, at 8; *see generally* 27 C.C.R. § 25705.  California regulations also allow the use of any scientifically defensible method "to establish that a level of exposure to a listed chemical poses no significant risk" even if numeric NSRLs are not met.  27 C.C.R. § 25701(a).  Accordingly, a company selling furniture in California can comply with Proposition 65 by (1) not using TDCPP; (2) using TDCPP in an amount that does not result in an exposure above the NSRL (or that otherwise satisfies OEHHA that the exposure poses no significant risk); or (3) providing a clear and reasonable warning for products with TDCPP.

**B.     The Parties.**

CEH is a small non-profit corporation headquartered in Oakland, California.  Cox Decl., ¶ 4.  CEH is dedicated to protecting the public from environmental health hazards and toxic exposures.  *Ibid.*  In furtherance of the public interest, CEH has prosecuted hundreds of Proposition 65 cases in California courts against manufacturers, distributors, and retailers of various consumer products, and settled its claims with thousands of such defendants in court-approved Consent Judgments.

1   *Ibid.*

2      BabyAge is a Pennsylvania for-profit corporation headquartered in Wilkes-

3   Barre.  Compl., ¶ 6.  BabyAge sells various infant's and children's products over the

4   internet to consumers nationwide, including directly to consumers in California.  *Id.*,

5   ¶¶ 6, 12, 27(c).

6   **C.**   **CEH's California Enforcement of Proposition 65 Against Sellers of
            Products Containing TDCPP.**

7      For years, CEH has been investigating the potential health hazards from the

8   use of TDCPP, and other chemical flame retardants, in consumer products.  Cox

9   Decl., ¶ 7; Mann Decl., ¶ 4.  Based on these extensive investigations, CEH has filed

10  four Proposition 65 enforcement cases in the Superior Court for the County of

11  Alameda involving TDCPP in a number of consumer products, including

12  upholstered furniture.  Cox Decl., ¶ 14; Mann Decl., ¶ 5.[2]  These complaints have

13  been deemed related cases by the California court, and are being jointly managed by

14  the same judge in the Complex Case Department.  Mann Decl., ¶ 6.  Over the course

15  of seven Case Management Conferences, the California court has become quite

16  familiar with the facts and law surrounding Proposition 65 issues relating to the

17  presence of TDCPP in consumer products.  *Ibid.*

18     Most of the over 70 entities named as defendants in CEH's related California

19  cases have chosen to settle their disputes with CEH by way of judicially-approved

20  Consent Judgments, in which they promise to reformulate their products to contain

21

22  _____

23     [2] *CEH v. A Baby, Inc., et al.*, Case No. RG-13667688 (filed February 15,
    2013) involves allegations of TDCPP in foam-cushioned upholstered furniture,

24  foam-cushioned pads for infants and children to lie on, and foam-cushioned mattress
    toppers.  *CEH v. Ameriwood Industries, Inc., et al.*, Case No. RG-13673582 (filed

25  March 29, 2013) involves allegations of TDCPP in upholstered furniture and
    reclining pads.  *CEH v. Britax Child Safety, Inc., et al.*, RG-13683725 (filed June

26  14, 2013) ("the *Britax* Action") involves allegations of TDCPP in upholstered
    furniture and reclining pads.  *Center for Environmental Health v. Acoustical*

27  *Solutions, Inc., et al.*, Case No. RG-13707315 (filed December 18, 2013) involves
    allegations of TDCPP in acoustic and soundproofing foam.  Mann Decl., ¶ 5.

28

no TDCPP whatsoever.  Mann Decl., ¶ 7.  Over 30 of these defendants have been out-of-state, and have hired local counsel to participate in the California proceedings.  *Ibid.*  The California court has already heard three rounds of Consent Judgment approval motions, in which it has approved all of CEH's Consent Judgments as satisfying the public interest purposes of Proposition 65.  *Ibid.*

**D.      BabyAge's Involvement in the California Litigation.**

On April 5, 2013, CEH purchased an item of upholstered furniture – a nursery "glider" chair – in California from BabyAge's website.  Cox Decl., ¶ 15.  No Proposition 65 warning was provided on the website prior to sale or on the product itself.  *Ibid.*  When an initial screening indicated that the item contained chlorine (a constituent of TDCPP), CEH sent the item to an analytical laboratory for confirmatory testing.  *Ibid.*  The lab testing indicated that the item in fact contained a substantial amount of TDCPP.  *Ibid.*

Based on this evidence, on May 16, 2013, CEH served a Notice of Violation on BabyAge and the pertinent government agencies alleging Proposition 65 violations as to BabyAge's California sales of upholstered furniture containing TDCPP, including but not limited to the glider chair.  Cox Decl., ¶ 15; Mann Decl., ¶ 9 & Exh. 4.  Unlike most of the defendants in the related California TDCPP cases, BabyAge did not attempt to contact CEH in response to its pre-suit Notice.  Mann Decl., ¶ 9.

On August 29, 2013, CEH added BabyAge as a named defendant to the pending *Britax* Action in California.  Mann Decl., ¶ 10 & Exh. 5-6.  On October 4, 2013, counsel for BabyAge contacted CEH, purportedly to commence settlement talks.  *Id.*, ¶ 11.  Based on these representations, CEH granted BabyAge a 15-day extension on its responsive pleading date, out to October 30.  *Ibid.*

On October 8, 2013, nearly five months after initially notifying BabyAge of its TDCPP contamination problem, CEH purchased another item of upholstered furniture containing TDCPP – a children's chair – in California from BabyAge's

1 website, again without a warning of any kind as to the carcinogenic risks of TDCPP.

2 Cox Decl., ¶ 16.

3      On November 12, 2013, CEH emailed counsel for BabyAge and the CEO of

4 BabyAge in furtherance of settlement discussions.  Mann Decl., ¶ 12.  In that email,

5 CEH notified BabyAge about the second item of contaminated children's furniture,

6 and also noted that BabyAge's responsive pleading was overdue.  *Ibid.*  On

7 December 4, 2013, having heard nothing in the intervening period, CEH emailed

8 BabyAge's counsel and CEO to indicate that written discovery would soon be

9 propounded, again noting that BabyAge's responsive pleading was overdue.  *Ibid.*

10 On December 7, 2013, counsel for BabyAge emailed CEH regarding settlement, but

11 did not mention the overdue responsive pleading.  *Ibid.*

12      On December 13, 2013, CEH propounded its first set of written discovery

13 requests on BabyAge.  Mann Decl., ¶ 13.  BabyAge did not respond, despite good

14 faith efforts by CEH to secure responses.  *Id.*, ¶¶ 13-14, 17.  On March 5, 2014, in

15 furtherance of anticipated future default proceedings, CEH served a second set of

16 written discovery requests on BabyAge.  *Id.*, ¶ 15.  Again, BabyAge did not

17 respond.  *Ibid.*

18 **E.    BabyAge's Duplicative Pennsylvania Suit.**

19      Instead, on March 11, 2014, CEH's attorneys in the California suit received a

20 fax from counsel for BabyAge attaching a copy of BabyAge's Pennsylvania

21 complaint, apparently filed in this Court on March 7, 2014.  Mann Decl., ¶ 16.  The

22 Pennsylvania complaint was verified by BabyAge's CEO, John M. Kiefer, and was

23 filed by Andrew J. Katsock, III, the same counsel representing BabyAge in the

24 California dispute.  Compl., pp. 12-13.  BabyAge's suit against CEH seeks a

25 declaratory judgment on two grounds.  First, the complaint asserts, Proposition 65 is

26 unconstitutional as applied to BabyAge's sale of furniture because its warning

27 requirements are preempted by the Federal Food, Drug and Cosmetic Act ("FDCA")

28 and unspecified federal laws administered by the U.S. Department of Agriculture

("USDA"). *Id.*, ¶¶ 21-24.  Second, the complaint contends, Proposition 65 is unconstitutional as applied to BabyAge because its warning requirements place an undue burden on interstate commerce and will impose crippling compliance costs on BabyAge. *Id.*, ¶¶ 25-28.  Although not styled as an enumerated "count," the complaint also seeks a ruling that CEH lacks standing to sue in both state and federal court because it has suffered no injury. *Id.*, ¶ 17, Prayer ¶ C.

BabyAge's complaint does not explain why any of these claims have not been raised as affirmative defenses in the California suit.  The complaint does suggest, however, that BabyAge prefers to litigate its defenses in this Court, rather than in the California court where suit has been pending against it for over nine months, because it does not want to incur the expense of hiring local California counsel. Compl., ¶ 13.  Tellingly, BabyAge's federal complaint does *not* deny that it exposes consumers of its products to toxic chemicals or its liability under Proposition 65:  to the contrary, the company straightforwardly admits that it did, in fact, sell upholstered furniture products containing TDCPP into California after the October 28, 2012 effective date, and that BabyAge did not provide Proposition 65 warnings on its products until November 2013. *Id.*, ¶¶ 12, 15.  The complaint also admits that BabyAge appeared in an earlier Proposition 65 suit brought by CEH in San Francisco Superior Court involving toxic lead in children's lunchboxes, which it ultimately settled by way of Consent Judgment. *Id.*, ¶ 13; *see also* Mann Decl., ¶ 8 & Exh. 3, ¶¶ 2, 4.

**F.     CEH's Unsuccessful Attempts to Convince BabyAge Not to Pursue the Frivolous Pennsylvania Action.**

On March 18, 2014, BabyAge reached out to CEH for the first time in over four months to re-engage settlement discussions.  Mann Decl., ¶ 18.  Over the course of the next several weeks, the parties discussed potential settlement options, but were unable to reach mutually agreeable terms. *Ibid.*  Throughout these talks, CEH attempted to impress upon BabyAge the frivolousness of the claims raised in

its declaratory judgment suit, and tried to convince BabyAge that these issues ought

to be resolved, if anywhere, in the pending California action.  *Ibid.*  Specifically, on

March 26, 2014, CEH sent BabyAge a lengthy email (1) explaining why its

preemption and Dormant Commerce Clause claims were meritless, (2) noting that

the Pennsylvania court lacks personal jurisdiction over CEH, (3) noting that the

allegations in the complaint are defective under recent Supreme Court precedent

interpreting Fed. R. Civ. P. 8(a), and (4) explaining that the Pennsylvania suit is

subject to a discretionary dismissal as duplicative of the first-filed California action.

*Ibid.*  CEH also warned BabyAge that, if BabyAge continues to fail to appear before

the California Court, CEH will have no choice but to seek a default judgment with

potential civil penalties in the millions of dollars, plus a full recoupment of CEH's

attorneys' fees and costs.  *Ibid.*  During these discussions, BabyAge made it clear

that the company is unconcerned about the prospects of a California default

judgment, that it has no intention of ever participating in the California suit, and that

it intends to vigorously prosecute its suit before this Court instead.  *Ibid.*  Based on

these representations, CEH hired its California counsel to assist in its Pennsylvania

defense, and hired local counsel as well.  Cox Decl., ¶ 17.

On April 22, 2014, CEH sent BabyAge a letter indicating that the filing of the

Pennsylvania complaint, which has no colorable legal basis and appears to have

been filed solely to harass CEH in an attempt to gain leverage in the California suit,

constitutes a violation of Fed. R. Civ. P. 11(c).  Mann Decl., ¶ 18 & Exh. 7.  The

letter explained why BabyAge's preemption argument is flawed, and set forth case

law specifically rejecting the principle that Proposition 65 is preempted by the

FDCA.  *Id.*, Exh. 7 (citing *Committee of Dental Amalgam Mfrs. & Distribs. v.

Stratton*, 92 F.3d 801, 813 (9th Cir. 1996)).  The letter also noted that the complaint

contains inaccurate statements regarding the absence of California "safe harbor"

levels for TDCPP and the necessity of product labeling (both of which are central to

BabyAge's argument that Proposition 65 places "undue burden" on interstate

commerce), and cited Supreme Court authority rejecting a similar challenge to state health and safety laws. *Ibid.* (citing *General Motors Corp. v. Tracy*, 519 U.S. 278, 306 (1997)). CEH asked BabyAge to provide legal authority supporting its facially invalid preemption and Commerce Clause arguments; otherwise, CEH warned, it would seek sanctions under Rule 11 if BabyAge forced it to draft a Motion to Dismiss. *Ibid.* CEH also requested an explanation of why BabyAge had not raised its federal defenses in the pending California suit (especially given its admission that the California court has personal jurisdiction over it), and, to the extent that BabyAge alleged a lack of resources to litigate the case in California, to explain how it nonetheless had ample resources to prosecute its Pennsylvania suit. *Ibid.* BabyAge neglected to respond to this letter.

## <u>LEGAL STANDARD FOR SANCTIONS</u>

Under Federal Rule of Civil Procedure 11(b), an attorney who submits papers to a federal court certifies that:

> (1) [the filing] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

As the Third Circuit has put it, "[t]he Rule imposes an obligation on counsel and client [to] 'Stop, Think, Investigate and Research' before filing papers either to initiate a suit or to conduct the litigation." *Project 74 Allentown, Inc. v. Frost*, 143 F.R.D. 77, 82 (E.D. Pa. 1992) (quoting *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987)). Rule 11 is governed by standard of "objective reasonableness," making "the subjective intent or belief of the signer" irrelevant. *Id.* at 82-83 ("'[A]

1    pure heart and an empty head' is not a defense to a Rule 11 violation.").  Although

2    such reasonableness is generally determined from the perspective at the time the

3    document was filed, "parties will not be entitled to continuing immunity if they

4    acquire or should acquire knowledge under the Rule's standard before a later filing."

5    *Hanoverian, Inc. v. Pennsylvania Dep't of Envtl. Protection*, 2008 WL 906545, at

6    *9 (M.D. Pa. Mar. 31, 2008) (quoting *Gaiardo*, 835 F.2d at 484).

7        A legal argument is "clearly unreasonable" for purposes of Rule 11(b)(2)

8    where "settled law opposes [the] argument and counsel does not confront or attempt

9    to distinguish adverse authority," or where "[the] argument consists of dubious legal

10   propositions unsupported by legal research."  *Matthews v. Freedman*, 128 F.R.D.

11   194, 200 (E.D. Pa. 1989).  Where such an argument is made by a represented party,

12   the proper subject of sanctions is the attorney, not the client.  *Cvetko v. Derry Tp.*

13   *Police Dep't*, 2010 WL 3338256, at *5 (M.D. Pa. Aug. 24, 2010) (citing Fed. R.

14   Civ. P. 11(c)(5)(A)).  For violations of Rule 11(b)(1) (improper purpose) or Rule

15   11(b)(3) (unsupported factual contentions), however, the court may impose

16   sanctions on the attorney *or* the client, at its discretion.  *Project 74*, 143 F.R.D. at

17   83.

18       "Once a court finds a violation of Rule 11, the imposition of sanctions is

19   mandatory."  *Cvetko*, 2010 WL 3338256, at *2.  One permissible measure of

20   sanctions is an award of attorneys' fees and costs.  *E.g.*, *id.* at *7 (awarding same).

21   "The starting point for a determination of attorney's fees, the lodestar calculation, is

22   the product of the number of hours reasonably expended in responding to the

23   frivolous paper times an hourly fee based on the prevailing market rate."  *Lease v.*

24   *Fishel*, 712 F. Supp. 2d 359, 378 (M.D. Pa. 2010).

25       In addition to Rule 11, federal courts have the inherent authority to sanction

26   both clients and attorneys for "bad faith" conduct, including needlessly increasing

27   litigation costs.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-48 (1991).  An award of

28   attorneys fees may be assessed as a sanction under this inherent power.  *Id.* at 45;

-10-

*O'Donnell v. Pennsylvania Dep't of Corrections*, 2011 WL 3163230, at *11 (M.D. Pa. July 26, 2011).

## ARGUMENT

### I. BABYAGE'S CLAIMS HAVE NO COLORABLE LEGAL BASIS, AND ARE FOUNDED ON FALSE ALLEGATIONS.

As set forth in CEH's accompanying Motion to Dismiss, BabyAge's preemption and Commerce Clause claims are legally groundless. Facially, the claim that the sale and labeling of *furniture* in any way encroaches upon the regulatory purview of the *Food and Drug* Administration or the U.S. Department of *Agriculture* is absurd. It is patently false that the FDCA authorizes the FDA to "make continuing determinations about the safety (including carcinogenicity and reproductive toxicity) of all substances in the United States consumer product supply," Compl., ¶ 22(a), or that "FDA has plenary jurisdiction over product labeling," *id.*, ¶ 22(e). The FDCA regulates five things: food, drugs, cosmetics, medical devices, and tobacco products. 21 U.S.C., Ch. 9, Subch. IV, V, VI & IX. It does not regulate *furniture*, or even the polyurethane foam to which TDCPP is added. Indeed, the *single* provision of the FDCA to which BabyAge cites – 21 U.S.C. § 343 (Compl., ¶ 22(e)) – regulates "misbranded food." As for preemption by "federal statutes that govern the labeling of products" administered by the USDA, BabyAge cannot identify a single legal provision that applies generally to all consumer products, or specifically to furniture. Indeed, CEH searched the entirety of the United States Code for a federal statute "contain[ing] an express prohibition against state imposition of any 'marking, labeling, packaging, or ingredient requirements in addition, to, or different than those made under' the respective acts," *id.*, ¶ 23(a), and found exactly two: 21 U.S.C. § 467e (which applies to "poultry and poultry products inspection"), and 21 U.S.C. § 678 (which applies to "meat inspection"). BabyAge's preemption argument is spun out of whole cloth.

BabyAge's Dormant Commerce Clause argument fares no better. CEH is

1  aware of no court opinion holding that the operation of Proposition 65, which has

2  been in continuous effect since 1986, places an undue burden on interstate

3  commerce, and such a finding would violate Supreme Court precedent generally.

4  Moreover, many of BabyAge's supporting allegations are outright fabrications.

5  BabyAge alleges that "there are no established levels of TDCPP deemed 'safe' with

6  respect to carcinogenicity." Compl., ¶ 26(b).  To the contrary, OEHHA has

7  established a discrete numeric NSRL for TDCPP.  Cox Decl., ¶ 12 & Exh. 2, at 8.

8  BabyAge alleges that it "cannot determine that a product that has a detectable

9  amount of TDCPP, however small, will be found to satisfy the 'no significant risk'

10 requirement." Compl., ¶ 26(d).  Actually, BabyAge can use the same methods used

11 by OEHHA in listing TDCPP, or any other "evidence, standards, risk assessment

12 methodologies, principles, assumptions or levels" that BabyAge can show to be

13 scientifically defensible.  27 C.C.R. § 25701(a).  BabyAge alleges that "Proposition

14 65 in effect requires the use of different labels for products sold in California than

15 are used in other parts of the United States." Compl., ¶ 27(d).  This is not true:

16 BabyAge can comply with Proposition 65 by providing website warnings – *as it*

17 *claims to be doing now* (*id.*, ¶ 16) – or, better still, by selling children's furniture

18 that does not contain toxic TDCPP.  BabyAge's assertions of "undue burden" are

19 also empirically contraindicated by the fact that (1) it is *cheaper* to make products

20 that do not contain TDCPP, since treated foam is more expensive than untreated

21 foam, Cox. Decl., Exh. 3, at 28; (2) over 30 non-Californian defendants have

22 already agreed to voluntarily reformulate a variety of consumer products, including

23 upholstered furniture, in settling CEH's Proposition 65 claims with respect to

24 TDCPP, Mann Decl., ¶ 7; and (3) BabyAge itself has managed to comply with

25 Proposition 65 in the past by committing to reformulate children's lunchboxes to

26 contain no actionable levels of lead, *id.*, Exh. 3, ¶ 2.

27     BabyAge's complaint is riddled with other factual inaccuracies as well.  For

28 instance, it is not true that "[p]ublished scientific literature indicates that TDCPP is

widely found in nature," Compl., ¶ 20 – TDCPP is made in laboratories and then added to products, Cox Decl., ¶ 8 & Exh. 1, at 2. It is not true that "TDCPP can be detected in virtually all flame retardant foam cushioning products," Compl., ¶ 20 – CEH has tested hundreds of foam-containing consumer products (including upholstered furniture, nap mats, changing pads, car seats, infant walkers, mattress toppers, and acoustical foam) and a percentage of these products do *not* contain TDCPP. Cox Decl., ¶ 7; *see also id.*, Exh. 1, at 3 (TDCPP found in only one-third of foam-cushioned children's products). Even BabyAge's allegations that "[t]he Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1343(4), 2201 and 2202," Compl., ¶ 8, are defective, since "federal defenses to state law claims cannot create federal jurisdiction" and "the Declaratory Judgment Act does not confer subject matter jurisdiction," *United States v. Pennsylvania Dep't of Envt'l Resources*, 923 F.2d 1071, 1079 (3d Cir. 1991). BabyAge's approach to filing this suit has been the exact opposite of the "Stop, Think, Investigate and Research" approach mandated by the Third Circuit.

## II.   BABYAGE BROUGHT THIS SUIT FOR AN IMPROPER PURPOSE.

As detailed above, there has always been an available forum in which BabyAge could assert its defenses: the pending California action. That Court already has institutional knowledge of Proposition 65 (both generally and as applied to TDCPP in furniture), is already familiar with specific facts regarding BabyAge, and has the institutional competence to adjudicate the interplay between state and federal law. BabyAge's gambit has been to ignore the California proceedings altogether, buying itself time to craft a plan to attempt to highjack that action into a more convenient forum for it alone, while forcing CEH to fight a battle on two fronts.[3] This is not a proper use of the Declaratory Judgment Act, and certainly

---

[3] Even now, BabyAge seeks to have this Court make expansive rulings that are applicable *only to the California action*, and not to *this* action. *E.g.*, Compl., ¶ 17, Prayer ¶ C (asking this Court to find that CEH has no standing in the California action).

1  evidences a bad faith scheme to increase litigation costs for CEH, while needlessly

2  wasting this Court's scarce judicial resources as well.  Federal courts have readily

3  assessed monetary sanctions under similar circumstances.  *E.g.*, *Lal v. Borough of*

4  *Kennett Square*, 935 F. Supp. 570, 576 (E.D. Pa. 1996) (assessing attorneys' fees

5  and additional monetary penalty against plaintiff who brought specious claims to

6  harass defendants).

7        BabyAge has shown additional bad faith by pressing forward with its

8  Pennsylvania suit even after CEH informed the company about the meritless nature

9  of its constitutional arguments.[4]  CEH gave BabyAge one clear chance to drop this

10  suit, thereby absolving the company of liability under Rule 11, but BabyAge would

11  not relent.  BabyAge has no one but itself and its attorney to blame for its present

12  predicament.

13  **III.    THE COURT SHOULD IMPOSE SANCTIONS AGAINST BABYAGE**
14  **SUFFICIENT TO COMPENSATE CEH FOR COSTS INCURRED IN**
       **DEFENDING THIS DUPLICATIVE, FRIVOLOUS SUIT.**

15        CEH submits that a stiff monetary sanction is required both to compensate

16  CEH for the time it has been forced to spend on defending this unreasonably filed

17  lawsuit, and to deter BabyAge and its counsel from future mischief.  As set forth in

18  the Declaration of Joseph Mann accompanying CEH's contemporaneous Motion to

19  Dismiss, CEH has incurred over $45,000 in legal fees and costs between its

20  California and Pennsylvania counsel, none of which would have been necessary had

21  BabyAge taken CEH's earlier warnings to heart.[5]  Mann Decl., ¶ 21-26.  Sharp

22  tactics such as those practiced by BabyAge have no place in the federal courts, and

23  this Court rightly should put an end to them.

24

25        [4] CEH raised the issues regarding lack of personal jurisdiction and abstention
26  months ago as well.  Mann Decl., ¶ 18.

27        [5] CEH reserves the right to supplement this amount based on further time and
    costs involved in replying to BabyAge's opposition to this Motion and the Motion to
28  Dismiss.

1

## CONCLUSION

2

For the foregoing reasons, Defendant CEH respectfully requests that the

3
Court impose a monetary sanction on BabyAge and/or its attorney, Andrew J.

4
Katsock, III.

5

6
DATED:  June 3, 2014                        Respectfully submitted,

7
                                            LEXINGTON LAW GROUP

8
                                            /s/ Mark N. Todzo

9
FAIR SHAKE                                  Mark N. Todzo (CA Bar No. 168389)
ENVIRONMENTAL LEGAL                         mtodzo@lexlawgroup.com

10
SERVICES                                    (Admitted *pro hac vice*)
Oday Salim (PA Bar No. 309542)              Joseph Mann (CA Bar No. 207968)

11
osalim@fairshake-els.org                    jmann@lexlawgroup.com
                                            (Admitted *pro hac vice*)

12
3445 Butler Street, Suite 102              503 Divisadero Street
Pittsburgh, PA  15201                       San Francisco, CA 94117

13
Telephone: (412) 904-2774                   Telephone: (415) 913-7800
Facsimile: (412) 291-1197                   Facsimile: (415) 759-4112

14

15
                                            *Attorneys for Defendant Center for*

16
                                            *Environmental Health*

17

18

19

20

21

22

23

24

25

26

27

28

-15-