## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BABYAGE.COM, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **3:14-CV-00431** |
| | : | **(JUDGE MARIANI)** |
| **CENTER FOR ENVIRONMENTAL** | : | |
| **HEALTH,** | : | |
| | : | |
| **Defendant.** | : | |

### MEMORANDUM OPINION

### I.   Introduction

Presently before the Court are a Motion to Dismiss (Doc. 10) and a Motion for

Sanctions (Doc. 14). Both Motions attack the Complaint in this action, in which a

Pennsylvania Plaintiff asks this Court to declare a California health and safety law, as

sought to be enforced by a private California non-profit corporation, unconstitutional. The

Motion to Dismiss argues that this Court lacks personal jurisdiction to hear this action under

Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, that this Court should abstain

from hearing the case under the Declaratory Judgment Act or dismiss the Complaint for

failure to state a claim under Federal Rule 12(b)(6). The Motion for Sanctions argues that,

because the Plaintiff's claims were brought for an improper purpose and are legally and

evidentiarily frivolous, the Court should impose sanctions on the Plaintiff in an amount

sufficient to compensate the Defendant for the cost of defending this lawsuit.

For the reasons that follow, the Court will grant the Motion to Dismiss under Rule 12(b)(2). Because, at the most fundamental level, this Court does not have personal jurisdiction over the California Defendant, the Court need not address the merits of the Defendant's arguments concerning abstention or Rule 12(b)(6). The Court will deny the Motion for Sanctions.

## II.    Factual Background and Procedural History

As discussed in Section III, *infra*, when the Court reviews a Complaint under Federal Rule 12(b)(2) for the existence of personal jurisdiction, it must look to "sworn affidavits or other competent evidence" outside the pleadings, and not merely rely on the allegations in Plaintiff's Complaint alone. *See Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).[1] In discussing the factual background of this case, the Court therefore considers all the evidence of record.

The parties agree that the Plaintiff, BabyAge, is a Pennsylvania business and that the Defendant, the Center for Environmental Health ("CEH") is a California non-profit corporation. (*See* Compl., Doc. 1, at ¶¶ 6-7; Def.'s Br. in Supp. of Mot. to Dismiss, Doc. 11, at 3.) The events giving rise to this Pennsylvania lawsuit began when CEH sued BabyAge in California state court pursuant to California's Proposition 65. (*See* Compl. at ¶ 11.) Proposition 65, as described by the California Department of Justice, is "a California law passed by citizen initiative" codified in relevant part at California Health & Safety Code §

---

[1] Thus, Plaintiff's claim that the Defendant has converted this Motion to Dismiss into a Motion for Summary Judgment by introducing evidence outside the pleadings, (*see* Pl.'s Br. in Opp. to Mot. to Dismiss, Doc. 19, at 5-6), misstates the law.

25249.6. (*See* Office of Attorney General, Frequently Asked Questions, Doc. 13-2, at 1.)[2]

That section provides that "[n]o person in the course of doing business shall knowingly and

intentionally expose any individual to a chemical known to the state to cause cancer or

reproductive toxicity without first giving clear and reasonable warning to such individual."

Cal. Health & Safety Code § 25249.6. California purports to publish a list of chemicals that

it believes to cause cancer, and requires businesses selling such products to provide "clear

and reasonable" warnings that a product contains a listed chemical. (*See* Doc. 13-2 at 1.)

The law further allows "a person in the public interest" who meets certain statutory

prerequisites to bring a private action to enforce its requirements. Cal. Health & Safety

Code § 25249.7(d). CEH—a private actor that purports to have met all statutory

prerequisites to bring a cause of action—filed a lawsuit against BabyAge and other

defendants in the Superior Court of Alameda County, California, alleging, *inter alia*, that

BabyAge sold upholstered furniture in California that will expose consumers to one of

California's enumerated carcinogenic chemicals without providing a clear and reasonable

warning. (*See* California Compl., Doc. 13-6 at ¶¶ 15, 28-30, 55-59; Am. to California

Compl., Doc. 13-7, at ¶ 2; *see also* Compl. at ¶ 11.)

BabyAge did not enter an appearance in California or otherwise defend that lawsuit.

(*See* Joseph Mann Decl., Doc. 13, at ¶¶ 10-18.) Instead, it filed the instant declaratory

---

[2] The Court does not mean to imply that it necessarily agrees with the truth or accuracy of the statements of law made on the California Justice Department's website, or indeed that it agrees with the truth or accuracy of any other party's interpretation of California law. It only cites the Justice Department's statements insofar as these statements provide relevant background information explaining why CEH originally brought this case in California court.

judgment action in Pennsylvania. Though the Pennsylvania Complaint appears to raise

affirmative defenses to the California action, (*see, e.g.*, Compl. at ¶¶ 12, 16), its requested

relief attacks the validity of Proposition 65 itself: it seeks a declaration that Proposition 65 is

preempted by federal law, violates the Commerce Clause, and cannot permissibly confer

standing on private parties like CEH, (*see id.* at pp. 11-12). The Complaint seeks this relief

by way of two counts, styled "Preemption" and "Commerce Clause." (*Id.* at pp. 6, 9.)

In response, CEH concurrently filed a Motion to Dismiss and Motion for Sanctions.

The Motion to Dismiss argues that this Court cannot assert personal jurisdiction over the

California Defendant because, in sum:

> CEH is a non-profit organization incorporated under California law, with its
> headquarters in California. CEH has no physical presence in Pennsylvania,
> and it has never owned nor leased any property here. It is not authorized to
> do business in Pennsylvania, has no Pennsylvania licenses or employees,
> and has no Pennsylvania agent for service of process. It has not brought suit
> in Pennsylvania nor, prior to the present case, been sued here. It has no
> Pennsylvania bank accounts, and has entered no contracts here.

(Doc. 11 at 7-8 (internal citations omitted).) CEH's only contact with Pennsylvania, it

argues, is that it maintains "a website that can be viewed by persons in Pennsylvania." (*Id.*

at 8.)

BabyAge does not dispute CEH's factual representations. Instead, it argues that

personal jurisdiction exists based on the facts that CEH "purchased the piece of children's

furniture that allegedly contained the offending chemical on-line on the Plaintiff's website

and that from 2007 through to the present, it has writing to [*sic*], communicating with and

4

had active dealings with the Plaintiff, BabyAge.com, Inc." (Doc. 19 at 10.) Read in the

context of Plaintiff's other filings, the "dealings" beginning in 2007 appear to refer to another

action in which CEH sued or threatened to sue BabyAge in California state court. (*Cf. id.* at

2.) BabyAge also argues, albeit summarily, that the case *Calder v. Jones*, 465 U.S. 783,

104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)—in which the Supreme Court found that a

California court could exercise jurisdiction in a libel action by a California plaintiff against

Florida newspapermen for statements made in an article published in Florida—establishes

"specific jurisdiction over this Defendant based on the effects of the Defendant's California

conduct against the Plaintiff had [*sic*] upon the Plaintiff in Pennsylvania." (Doc. 19 at 11.)

## III.   Analysis

### a.   Motion to Dismiss

#### i.   Standard of Review

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a

complaint for lack of personal jurisdiction to hear the claims against it. Fed. R. Civ. P.

12(b)(2). "In deciding a motion to dismiss for lack of personal jurisdiction, we take the

allegations of the complaint as true. But once a defendant has raised a jurisdictional

defense, a plaintiff bears the burden of proving by affidavits or other competent evidence

that jurisdiction is proper." *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir.

1996) (internal citations omitted). Because a 12(b)(2) motion "is inherently a matter which

requires resolution of factual issues outside the pleadings," once the defense has been

raised, the plaintiff must rely on "competent evidence" and not merely "rely on the bare

pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack

of *in personam* jurisdiction." *Time Share Vacation Club*, 735 F.2d at 66 n.9. However, if

"the district court does not hold an evidentiary hearing, 'the plaintiff need only establish a

*prima facie* case of personal jurisdiction.'" *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d

324, 330 (3d Cir. 2009) (quoting *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316

(3rd Cir. 2007) (internal alteration omitted)).

### ii. Jurisdiction

"A federal district court may assert personal jurisdiction over a nonresident of the

state in which the court sits to the extent authorized by the law of that state." *Provident Nat'l*

*Bank v. California Federal Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987). United

States Supreme Court decisions in the past several decades "have differentiated between

general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d

796 (2011). Pennsylvania law authorizes general personal jurisdiction over a corporation

when the corporation carries on "a continuous and systematic part of its general business

within this Commonwealth," 42 Pa. Cons. Stat. Ann. § 5301(a)(2)(iii), and authorizes

specific jurisdiction over "all persons [including corporations] who are not within the scope of

section 5301 . . . to the fullest extent allowed under the Constitution of the United States

[which] may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States," 42 Pa. Cons. Stat. Ann. § 5322(b).

Here, Plaintiff does not contest that this Court lacks general jurisdiction over CEH. (Doc. 19 at 10.) Accordingly, the Court will only analyze the record for evidence of specific jurisdiction.

In this regard, "[t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 105 S. Ct. 2174, 2181, 85 L. Ed. 2d 528 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S. Ct. 154, 160, 90 L. Ed. 95 (1945)). Thus, a state may "assert specific jurisdiction over an out-of-state defendant who has not consented to suit there" only if "the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* at 472, 105 S. Ct. at 2182 (internal citations and quotation marks omitted). In short, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 558, 567, 62 L. Ed. 2d 490 (1980).

Consistent with the foregoing, the courts in the Third Circuit "undertake a three-part inquiry" in determining whether specific jurisdiction exists:

> First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King*[, 471 U.S. at 472, 105 S. Ct. at 2182]. Second, the

7

litigation must "arise out of or relate to" at least one of those activities. *Helicopteros* [*Nacionales de Colombia, S.A. v. Hall*], 466 U.S. [408,] 414, 104 S. Ct. [1868,] 1872[, 80 L. Ed. 2d 404 (1984)]; *O'Connor*, 496 F.3d at 317. And third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476, 105 S. Ct. at 2184 (quoting *Int'l Shoe*, 326 U.S. at 320, 66 S. Ct. at 160).

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir.

2009).

Viewed in light of this precedent, BabyAge has failed to make a *prima facie* case that

CEH "purposefully directed its activities" at Pennsylvania such that specific personal

jurisdiction would be appropriate. While BabyAge contends that correspondence from CEH

in connection with this and another 2007 lawsuit are evidence of purposeful availment, the

case law establishes that such contacts are irrelevant for jurisdictional purposes, because

"the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*,

___ U.S. ___, 134 S. Ct. 1115, 1122, 188 L. Ed. 2d 12 (2014).

> Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.  To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. *But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.*  Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State.

*Id.* at 1122-23 (internal citations omitted) (emphasis added).  The argument that jurisdiction

exists because of CEH's litigation-related contacts with the Pennsylvania Plaintiff therefore

8

runs directly afoul of the case law, in that it seeks to base jurisdiction on the Defendant's contacts with a Pennsylvanian resident, and not with the Pennsylvania forum state itself.

Similar reasoning applies to BabyAge's attempt to analogize *Calder v. Jones* to the instant case. The *Calder* Court found that a Florida reporter and editor of an allegedly libelous publication against a California plaintiff could be sued in California on the grounds that those defendants "are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California." *Calder*, 465 U.S. at 789, 104 S. Ct. at 1487. The *Calder* defendants "wrote and . . . edited an article that they knew would have a potentially devastating impact upon" the California plaintiff. *Id.* Conversely, in our own case, CEH's act of filing the California lawsuit is not alleged to be tortious (as would be the case, e.g., if BabyAge had filed an action for wrongful use of civil proceedings, *cf. Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 191-92 (Pa. Super. Ct. 1993)). To the contrary, BabyAge only alleges that Proposition 65 is unconstitutional. But even assuming *arguendo* that this conclusion is correct, enforcing a facially valid law later found unconstitutional is simply not enough to establish minimum contacts with the alleged violator's forum. It does not involve wrongful actions "expressly aimed" at Pennsylvania or other contacts with the forum state itself; it merely shows that CEH has a legal dispute with a Pennsylvania resident, which is insufficient as described in *Walden*, *supra*.

This leaves only BabyAge's claim that CEH's act of buying a product from BabyAge's Pennsylvania website establishes jurisdiction here. Nearly all available

9

precedent involving the exercise of jurisdiction based on Internet transactions involves the opposite situation: that is, the cases nearly always answer whether an Internet *seller* has availed itself of a particular forum by selling goods through its website to buyers in that forum.

Notwithstanding the dearth of direct precedent, the Court is guided by the general principle that the Internet does not change the law of personal jurisdiction, and therefore "[d]ifferent results [from those obtaining in pre-Internet jurisdictional analyses] should not be reached simply because business is conducted over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).[3] In this regard, analogous non-Internet cases have held that, while it is possible that "a commercial buyer that has only tangential contact with the seller in the seller's state" can be haled into the seller's state for actions arising out of those contacts, when the only contacts between the defendant and the forum state were *de minimis*, e.g., "some telephone calls and letters," the exercise of specific jurisdiction must fail. *See Control Screening, LLC v. Technological Application & Prod. Co.*, 687 F.3d 163, 168 (3d Cir 2012) (quoting *Verotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 152 (3d Cir. 1996)). "It is well established . . . that a nonresident's contracting with a forum resident, without more, is insufficient to establish the

---

[3] Though the *Zippo* decision arises from the Western District, and is therefore not directly precedential to us, the Third Circuit has endorsed it as "a seminal authority regarding personal jurisdiction based upon the operation of an Internet web site." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003).

10

requisite 'minimum contacts' required for an exercise of personal jurisdiction over the nonresident." *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.,* 5 F.3d 28, 32 (3d Cir. 1993).

 Here, Plaintiff has shown much less contact than the few "telephone calls and letters" found insufficient in *Verotex*. Rather, BabyAge has only shown that CEH accessed its publicly-available website to buy a product—an act which appears, at most, to constitute "a nonresident's contracting with a forum resident, without more." Thus, following the logic of the available Third Circuit case law, BabyAge's asserted contacts are insufficient.

### iii. Conclusion

 For the reasons discussed above, BabyAge failed to meet its burden to establish a *prima facie* case of personal jurisdiction, warranting the dismissal of its Complaint.

 The Court is aware that, when "the plaintiff's claim is not clearly frivolous as to the basis for personal jurisdiction, the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden." *Metcalfe*, 566 F.3d at 336 (quoting *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983)). The Court might ordinarily order discovery before dismissing for lack of personal jurisdiction. *Cf. Colony Nat'l Ins. Co. v. DeAngelo Bros., Inc.*, 2014 WL 1315391, at *7-8. Nonetheless, jurisdictional discovery would be fruitless in this particular case because the Plaintiff has already admitted (1) that this Court can only exercise *specific* jurisdiction based on CEH's actions in connection with this lawsuit, and (2) that non-case-specific general jurisdiction does not exist. (*See* Doc. 19 at 10.) As to the events giving rise

to this lawsuit, it appears undisputed that CEH bought furniture from BabyAge and

thereafter initiated a lawsuit in California against it. The Complaint's entire claim for relief

rests on this factual predicate. But when the Court accepts such facts as true, the question

of jurisdiction becomes only an issue of law that would not be aided by discovery.

Moreover, because both sides agree that CEH does not maintain a presence in

Pennsylvania sufficient to support general jurisdiction, discovery could not disclose any

evidence not related to the facts of this case that could allow this Court to exercise

jurisdiction.

Therefore, the Complaint is dismissed for lack of personal jurisdiction.

## b. Motion for Sanctions

### i. Standard of Review

Federal Rule of Civil Procedure 11(b) provides as follows:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
- (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
- (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
- (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

12

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.* at 11(c)(1).[4] "In scrutinizing a filed paper against these requirements, courts must apply an objective standard of reasonableness under the circumstances. The wisdom of hindsight should be avoided; the attorney's conduct must be judged by what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988) (internal citations and quotation marks omitted).

"Rule 11 sanctions should not be viewed as a general fee shifting device. By and large federal courts are bound by the 'American Rule,' requiring parties to shoulder their own legal expenses." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987). "The goal of Rule 11, therefore, is . . . correction of litigation abuse." *Id.* "Sanctions are to be applied only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Ario v. Underwriting Members of Syndicate 53*, 618 F.3d 277, 297 (3d Cir. 2010)

---

[4] CEH claims that "[o]nce a court finds a violation of Rule 11, the imposition of sanctions is mandatory." (Def.'s Br. in Supp. of Mot. for Sanctions, Doc. 15, at 10 (quoting *Cvetko v. Derry Twp. Police Dep't*, 2010 WL 3338256, at *2 (M.D. Pa. 2010)).) However, the cases on which *Cvetko* relies for this proposition predate the 1993 amendments to Rule 11. Today, the clear language of the Rule allows the Court discretion to decide whether to impose sanctions. *See also* Fed. R. Civ. P. 11(b), (c) advisory committee's note, 1993 amendment ("Whether a violation has occurred and what sanctions, if any, to impose for a violation are matters committed to the discretion of the trial court . . . .").

(quoting *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir.

1988)).

> The standard developed by courts for imposition of sanctions under Rule 11
> is stringent because such sanctions 1) are in derogation of the general
> American policy of encouraging resort to the courts for peaceful resolution of
> disputes, 2) tend to spawn satellite litigation counter-productive to efficient
> disposition of cases, and 3) increase tensions among the litigating bar and
> between the bench and the bar.

*Doering*, 857 F.2d at 194 (internal citations and quotation marks omitted).

Moreover, "[f]ee-shifting is but one of several methods of achieving the various goals

of Rule 11. District courts should, therefore, consider a wide range of alternative possible

sanctions for violations of the rule." *Id.* (internal citations omitted). In choosing the proper

sanction, the Court should choose "the minimum that will serve to adequately deter the

undesirable behavior." *Id.* (quoting *Eastway Constr. Corp. v. City of New York*, 637 F.

Supp. 558, 565 (E.D.N.Y. 1986)).

### ii. Analysis

CEH contends that BabyAge has violated Rule 11 by asserting claims with no

colorable legal basis that are founded on false allegations, (Doc. 15 at 11), and by filing its

Complaint for the improper purpose of procedural and jurisdictional gamesmanship, (*id.* at

13-14).

The Court agrees that BabyAge's Complaint is defective, as detailed above. But

regardless of its various defects, the Court cannot agree that BabyAge's Complaint is so

"patently unmeritorious or frivolous" as to warrant sanctions beyond the dismissal already

14

imposed for lack of personal jurisdiction. *Cf. Ario*, 618 F.3d at 297 (finding a claim, which was not directly foreclosed by existing case law but relied on irrelevant or distinguishable cases, to be non-sanctionable).

First, CEH attacks the merits of BabyAge's Preemption and Commerce Clause claims. (Doc. 15 at 11-13.) It argues that the Preemption claim is frivolous because it is based on an argument that "the sale and labeling of *furniture* . . . encroaches on the regulatory purview of the *Food and Drug* Administration" under the Food, Drug, and Cosmetic Act (FDCA), which "is absurd." (Doc. 15 at 11 (emphasis in original).) The Court, however, notes that certain labeling requirements in Proposition 65 have been found preempted under the FDCA before. *See, e.g., People ex rel. Lockyer v. Tri-Union Seafoods, LLC*, 2006 WL 1544384, at *73 (Cal. Super. Ct. 2006); *but cf. Fellner v. Tri-Union Seafoods*, 539 F.3d 237, 240-41 (3d Cir. 2008) (finding similar failure to warn claims asserted under New Jersey law not preempted). The *Tri-Union* cases differ from the present one in various ways, most obviously in that they related to food labeling. However, it is conceivable that BabyAge could rely on these and similar cases to show that in some respects they can be analogized to the sale of furniture as well. While doing so convincingly might prove difficult—a question on which this Court takes no position—the Court is not prepared to say that the Preemption claim is so deficient as to be "patently unmeritorious or frivolous." *Cf. Mary Ann Pensiero*, 847 F.2d at 94 (noting that sanctions should not be

imposed "as an automatic penalty against an attorney or party advocating the losing side of a dispute" or against "adventuresome, though responsible, lawyering").

A similar analysis applies to BabyAge's Commerce Clause claim. The doctrine of the dormant Commerce Clause holds that "[t]hough phrased as a grant of regulatory power to Congress, the [Commerce] Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Oregon*, 511 U.S. 93, 98, 114 S. Ct. 1345, 1349, 128 L. Ed. 2d 13 (1994). While the Court is unaware of any precedent deciding whether Proposition 65 violates the dormant Commerce Clause, it is at least plausible that BabyAge could advance the nonfrivolous argument that it does, insofar as the Proposition impedes the flow of goods between California and other states. Again, this argument might well be found unconvincing under existing case law. But that does not make it "patently unmeritorious or frivolous."

But even if we assume *arguendo* that the Commerce Clause claim is barred under the available precedent, claims based on "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" are explicitly authorized by the Federal Rules. *See* Fed. R. Civ. P. 11(b)(2). Commerce Clause jurisprudence has undergone sharp changes over the last century which were not, at the time, in strict accordance with established precedent. Because the Plaintiff's claim is asserted under a Clause marked by

a history of controversy and fluidity, the Court is not prepared to label its particular interpretation "frivolous" under Rule 11.

This leaves only CEH's argument that the Complaint was brought for an improper purpose. Though the Court cannot know BabyAge's motivations for filing this Pennsylvania lawsuit, CEH argues that the evidence indicates that "BabyAge's gambit has been to ignore the California proceedings altogether, buying itself time to craft a plan to attempt to highjack that action into a more convenient forum for it alone, while forcing CEH to fight a battle on two fronts." (Doc. 15 at 13.)

This Court of course has a duty to prevent parties from filing duplicative lawsuits for the sole purpose of procedural advantage. However, it is not convinced that the available evidence establishes the improper motives that CEH alleges. BabyAge asserted several bases for jurisdiction, which, though ultimately unsuccessful, are not so outlandish as to necessarily prompt the conclusion that BabyAge must have brought this action for sanctionable motives. Indeed, it is significant that two of BabyAge's purported bases for jurisdiction were not "contradicted" by existing case law, but were only found unconvincing under it. The Court concluded that BabyAge's attempt to analogize *Calder v. Jones* was inapt and, further, that the logical application of the cases discussing minimum contacts between a buyer and the forum state precluded jurisdiction here. In such cases, where the Plaintiff does not contradict case law but only relies on unconvincing cases, the Court should be hesitant to levy sanctions. *Cf. Ario*, 618 F.3d at 297, *discussed at* p. 15, *supra*.

Therefore, the Court cannot conclude that any sanction beyond the dismissal already ordered is proper. CEH's Motion for Sanctions is accordingly denied.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 10) is **GRANTED** and Defendant's Motion for Sanctions (Doc. 14) is **DENIED**. A separate Order follows.

Robert D. Mariani
United States District Judge